NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RONALD L. BAISA, | ) | No. C 11-3525 LHK (PR) |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR |
| | ) | WRIT OF HABEAS CORPUS; |
| vs. | ) | GRANTING CERTIFICATE OF |
| | ) | APPEALABILITY |
| G.D. LEWIS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

        Petitioner, a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  In his petition, Petitioner claims that the application of California

Penal Code section 2933.6, amended in 2010, to the execution of his sentence violated the Ex

Post Facto Clause and breached his plea agreement.  The Court ordered Respondent to show

cause why the petition should not be granted.  Respondent has filed an answer.  The Court did

not receive a traverse from Petitioner.

        On March 4, 2013, the Court directed Respondent to file a copy of the Petitioner's plea

hearing transcript as a supplemental exhibit to assist the Court's analysis of Petitioner's claim

regarding the breach of his plea agreement.  (Dkt. No. 7.)  On March 8, 2013, Respondent filed

an objection to the order, stating, *inter alia*, that Petitioner withdrew such a claim in his traverse.

(Dkt. No. 8.)  Respondent has attached a copy of Petitioner's traverse as an exhibit to his

1   objections. (Dkt. No. 8, Ex. 1.) The certificate of service indicates that, although the Court

2   never received it, Petitioner sent a copy of his traverse to this Court on December 25, 2011. (*Id.*,

3   Ex. 1 at 8.) The Clerk shall file Petitioner's traverse, which is attached as an exhibit to

4   Respondent's objection. (*Id.*, Ex. 1.) So filed, the Court deems it timely. In Petitioner's

5   traverse, Petitioner does indeed withdraw his claim that amended section 2933.6 breached his

6   plea agreement. Thus, Respondent's objection is well-taken, and the Court DISMISSES the

7   breach of plea agreement claim.

8      Having reviewed the briefs and the underlying record, the Court concludes that Petitioner

9   is not entitled to relief based on the remaining claim, and DENIES the petition.

10                      **PROCEDURAL HISTORY**

11   A.     <u>Petitioner's Criminal and Prison History</u>

12      On March 26, 2004, Petitioner was sentenced to a term of 15-years after pleading guilty

13   to possession for sale of a controlled substance, with sentencing enhancements for prior

14   convictions and a previous prison term. (Ans. at ¶ 1.) On December 16, 2004, Petitioner was

15   validated as an active member of the Mexican Mafia prison gang, and as a result, on February

16   17, 2005, Petitioner was given an indeterminate term in the Security Housing Unit ("SHU"). (*Id.*

17   at ¶ 2.) Petitioner was re-validated on June 16, 2008, and again on January 20, 2011. (*Id.*)

18      Under state regulations and rules of the California Department of Corrections &

19   Rehabilitation ("CDCR"), an inmate who has been validated as a gang affiliate and placed in the

20   SHU may be eligible to be reviewed for inactive gang status after six years of non-involvement

21   in gang activity. *See* Cal. Code Regs. tit. 15, § 3378(e). Once validated, an inmate can also drop

22   out of his prison gang at any time by completing a debriefing process. *See* Cal. Code Regs. tit.

23   15, § 3378.1. There is no evidence that Petitioner has debriefed or been deemed inactive in the

24   prison gang.

25   B.     <u>Section 2933.6</u>

26      On January 25, 2010, California Penal Code section 2933.6 was amended as follows:

27   "Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric

28

1    Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for

2    misconduct described in subdivision (b) *or upon validation as a prison gang member or*

3    *associate* is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or

4    she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or

5    the Administrative Segregation Unit for that misconduct."  Cal. Penal Code § 2933.6 (emphasis

6    added).

7          Before section 2933.6 was amended, it was "possible for validated prison gang members

8    placed in [a SHU] to earn conduct credits totaling one-third of their sentences."  *In re Efstathiou*,

9    200 Cal. App. 4th 725, 728 (2011).  After the amendment, however, a validated gang member or

10   associate in a SHU could not earn conduct credits.  *See id.* at 732.

11   C.    Application of Section 2933.6

12         Before section 2933.6 was amended, Petitioner earned worktime or program credits while

13   in the SHU as a validated prison gang member, and was given an earliest possible release date

14   ("EPRD") of November 18, 2013.  (Pet. at 14.)  But after section 2933.6 was amended, he was

15   ineligible to earn these credits, and his EPRD was recalculated and postponed until October 20,

16   2014.  (*Id.*)

17   D.    Petitioner's State Habeas Petitions

18         In September 2010, petitioner filed a petition for a writ of habeas corpus in San

19   Bernardino County Superior Court claiming that the application of amended section 2933.6 to

20   the execution of his sentence by denying him conduct credits was a violation of the Ex Post

21   Facto Clause.  He also claimed that the application of amended section 2933.6 violated the terms

22   of his plea agreement.  The Superior Court denied the petition on October 5, 2010, noting that

23   there is "no basis for habeas relief."  (Pet., Ex. C at 40.)  Petitioner filed petitions to the

24   California Court of Appeal and the California Supreme Court, but both courts summarily denied

25   the petitions on November 22, 2010, and June 15, 2011, respectively.  (Pet., Exs. A at 24, B at

26   32.)

27         Petitioner then filed the instant federal petition for writ of habeas corpus under § 2254

28

Order Denying Petition for Writ of Habeas Corpus; Granting Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.11\Baisa525hcden.wpd

1   raising his claim that the application of amended section 2933.6 to deny him conduct credits is a

2   violation of the Ex Post Facto Clause, and violates his right to due process because it breached

3   his plea agreement.

4                                    **STANDARD OF REVIEW**

5          This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

6   custody pursuant to the judgment of a State court only on the ground that he is in custody in

7   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The

8   petition may not be granted with respect to any claim that was adjudicated on the merits in state

9   court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

10  contrary to, or involved an unreasonable application of, clearly established Federal law, as

11  determined by the Supreme Court of the United States; or (2) resulted in a decision that was

12  based on an unreasonable determination of the facts in light of the evidence presented in the

13  State court proceeding." 28 U.S.C. § 2254(d).

14         "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

15  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

16  law or if the state court decides a case differently than [the] Court has on a set of materially

17  indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the

18  'reasonable application clause,' a federal habeas court may grant the writ if the state court

19  identifies the correct governing legal principle from [the] Court's decisions but unreasonably

20  applies that principle to the facts of the prisoner's case." *Id.* at 413.

21         "[A] federal habeas court may not issue the writ simply because the court concludes in its

22  independent judgment that the relevant state-court decision applied clearly established federal

23  law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411.

24  A federal habeas court making the "unreasonable application" inquiry should ask whether the

25  state court's application of clearly established federal law was "objectively unreasonable." *Id.* at

26  409.

27         The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is

28

in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412. Clearly established federal law is defined as "the governing legal principle or principles set forth by the Supreme Court." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, however, only the Supreme Court's holdings are binding on the state courts, and only those holdings need be "reasonably" applied. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

### DISCUSSION

Petitioner claims that applying amended section 2933.6 to deny him conduct credits violates the Ex Post Facto Clause because the amendment increased the punishment for his 2004 conviction by lengthening the duration of his sentence.[1]

Respondent contends that amended section 2933.6 does not increase the punishment for petitioner's 2004 conviction and instead penalizes prison misconduct (i.e., active membership in a prison gang) occurring after January 25, 2010. Therefore, argues Respondent, the application of the amended statute is not an impermissible ex post facto law. Respondent further contends that Petitioner's claim is without merit because the state courts' rejection of the claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, as required by 28 U.S.C. § 2254(d).

A.   Clearly established Supreme Court law

The United States Constitution prohibits the states from passing any ex post facto law. U.S. Const. art. I, § 10. "To fall within the ex post facto prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' . . . by altering the definition of criminal conduct or increasing the

---

[1] Petitioner further alleges that he has lost all credits previously earned as a result of the application of the amended statute. (Pet. at 19.) However, Respondent disputes this (Ans. at ¶ 4), and the record does not support Petitioner's assertion. (Ans., Ex. 5; Pet., Ex. F at 64, 67) ("All credits earned prior to January 25, 2010, will and are to be retained by the inmate."). Petitioner points to no evidence to the contrary, and thus, the Court rejects this allegation.

1   punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citations omitted).

2   Although the general rule appears straightforward, its application is more complex when

3   attempting to determine the date to be used for retrospective analysis and the punishment to

4   which the rule applies.

5         The Supreme Court rulings that shed some light on the Court's approach to determining

6   retrospectivity and the punishment affected, can be summarized as follows:

7         An amendment making mandatory a sentence that was the maximum permissible
    under old law was an impermissible ex post facto law when applied to a person
8   who committed his crime before the amendment. ([*Lindsey v. Washington*, 301
    U.S. 397 (1937).]) An amendment forbidding prisoners from earning good
9   conduct credits for six months after reincarceration following a parole violation
    was an impermissible ex post facto law for a prisoner who violated parole after
10  the amendment but had been sentenced under the old law. ([*Scafatti v.
    Greenfield*, 390 U.S. 713 (1968) (summary affirmance).]) An amendment that
11  reduced the amount of good time credits that could be earned was an
    impermissible ex post facto law when applied to a prisoner whose crime was
12  committed before the amendment was enacted. ([*Weaver v. Graham*, 450 U.S. 24
    (1981).]) An amendment that presented at most a speculative potential of a
13  longer confinement (by increasing intervals between parole hearings for inmates
    most unlikely to be paroled) did not violate the Ex Post Facto Clause.
14  ([*California Dep't of Corrections v. Morales*, 514 U.S. 499 (1995).]) An
    amendment taking away accumulated provisional credits was an impermissible ex
15  post facto law because it lengthened a period of incarceration for person
    sentenced under the old law. ([*Lynce v. Mathis*, 519 U.S. 433 (1997).]).

16  *Nevarez v. Lewis*, No. C 12-1912 SI (PR), 2012 WL 3646895, at *6 (N.D. Cal. Aug. 23, 2012).

17  B.    <u>Lower Federal Courts Take Differing Approaches</u>

18        The lower federal courts have taken different approaches to Ex Post Facto Clause claims

19  regarding time credits. Some federal courts – like the California state courts – have considered

20  the relevant date for retrospectivity purposes to be the date of an "in-prison event", and the

21  punishment to be the time credit deprivation. This approach generally results in no ex post facto

22  violation being found. *See, e.g.*, *Hunter v. Ayers*, 336 F.3d 1007, 1009-10 (9th Cir. 2003) (using

23  date of prison misconduct as relevant date for analysis of amendment to law regarding credit loss

24  and restoration); *Ellis v. Norris*, 232 F.3d 619, 620-21 (8th Cir. 2000) (state court's decision that

25  repeal of statute that had allowed prison officials discretion to award additional good time credits

26  did not violate Ex Post Facto Clause was not contrary to or an unreasonable application of

27  clearly established federal law – prisoner received all the accrued extra good time credits and

28

Order Denying Petition for Writ of Habeas Corpus; Granting Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.11\Baisa525hcden.wpd

1  only lost the ability to be awarded additional good time credits); *Abed v. Armstrong*, 209 F.3d

2  63, 66 (2d Cir. 2000) (administrative directive adopted ten years after petitioner was sentenced

3  that disallowed good time credits for inmates classified as "security risk group safety threat

4  members"; "unlike *Lynce* and *Weaver*, the [d]irective was not applied retroactively" to petitioner

5  because no good time credit earned before the directive was forfeited and petitioner was not so

6  classified until after the directive was in effect).

7       Other federal courts have considered the relevant date to be the date of the criminal

8  offense, conviction or sentencing, and the punishment to be the original sentence for the crime.

9  This approach is more likely to result in a finding of an ex post facto violation.  *See, e.g.*, *Moor*

10 *v. Palmer*, 603 F.3d 658, 664 (9th Cir. 2010) (statute that was amended in 1997 to require a

11 psychological review as a precondition for parole for offenses such as petitioner's "was applied

12 retroactively" to petitioner who had been convicted in 1994 at a time when a psychological

13 review was not needed); *Ellis v. Norris*, 232 F.3d 619, 621 (8th Cir. 2000) (state "concedes that

14 the repeal of extra good-time credit applies retroactively, i.e., it applies to prisoners serving

15 sentences imposed prior to the repeal, as well as to those serving sentence imposed afterward");

16 *Flemming v. Oregon Bd. of Parole*, 998 F.2d 721, 724 (9th Cir.1993) (application of amended

17 parole regulation that was enacted after petitioner's offenses to calculate petitioner's sentence

18 reduction "gives rise to the Supreme Court's first 'critical element' for an ex post facto

19 violation").

20       This split in approaches among the lower federal courts tends to show the absence of

21 clear guidance from the Supreme Court on the ex post facto analysis of in-prison events.  *Accord*

22 *Nevarez*, 2012 WL 3646895, at *7.

23 C.   Analysis

24       In the instant case, there is no reasoned decision from the state courts rejecting

25 Petitioner's ex post facto claim.  The San Bernardino County Superior Court rejected the claim

26 with no comment other than it had found "no basis for habeas relief" (Pet., Ex. C at 40), and the

27 California Court of Appeal and California Supreme Court rejected the claim with no comment

28

Order Denying Petition for Writ of Habeas Corpus; Granting Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.11\Baisa525hcden.wpd

1  whatsoever (Pet., Exs. A at 24, B at 32).  It cannot be said that the state courts' rejection of

2  Petitioner's ex post facto claim was contrary to, or involved an unreasonable application of,

3  *clearly established* Supreme Court precedent.  *See* 28 U.S.C. § 2254(d) (emphasis added).

4  Like some of the lower federal courts noted above, California state courts have

5  considered the relevant date for retrospectivity purposes to be the date of an in-prison event and

6  the punishment to be the time-credit deprivation.  Generally, those Cailfornia state courts have

7  found no ex post facto violation.  The approach has been used since the California Supreme

8  Court decided *In re Ramirez*, 39 Cal. 3d 931 (1985).

9  In *Ramirez*, the California Supreme Court found a statutory amendment was not

10  retrospective, and therefore did not violate the ex post facto principle.  The statutory amendment

11  at issue increased the amount of sentence reduction credits that could be forfeited for prison

12  misbehavior.  39 Cal. 3d at 932-33.  The amendment was applied to an inmate who committed

13  his criminal offense, for which he was imprisoned, before the effective date of the amendment.

14  The California Supreme Court distinguished the United States Supreme Court's opinion in

15  *Weaver* as follows:

16       There is a critical difference between a diminution of the ordinary rewards for
         satisfactory performance of a prison sentence – the issue in *Weaver* – and an
17       increase in sanctions for future misbehavior in prison – which is at issue here.
         Here, [unlike in *Weaver*], petitioner's opportunity to earn good behavior and
18       participation credits is unchanged.  All that has changed are the sanctions for
         prison misconduct.  Unlike *Weaver*, petitioner's effective sentence is not altered
19       by the [statutory amendment] unless petitioner, by his own action, chooses to alter
         his sentence.
20
21  *Id.* at 937.

22  Similarly, in *In re Sampson*, 197 Cal. App. 4th 1234 (2011), the California Court of

23  Appeal used this approach to reject the ex post facto challenge to section 2933.6 from an inmate

24  who, like Petitioner, had been sentenced and validated as a gang affiliate before section 2933.6

25  was amended.  *Sampson* explained that the Ex Post Facto Clauses of the federal and California

26  constitutions were "analyzed identically."  197 Cal. App. 4th at 1241.  Assuming arguendo that

27  the credit-eliminating amendment to section 2933.6 constituted punishment, the state appellate

28  court was "not convinced that it punishes the criminal conduct for which petitioner was

1   imprisoned, or that it punishes misconduct that occurred prior to January 25, 2010." *Id.* "It is

2   punishment for gang-related conduct that continued after January 25, 2010." *Id.* at 1242.  The

3   *Sampson* court found ongoing misconduct that could be punished based on its reasoning that

4   prison gangs present a serious threat to the safety and security of California prisons; a regulation

5   prohibits inmates from knowingly promoting, furthering or assisting any prison gang; the

6   validation of a prison gang member or associate is done with procedural protections; and the

7   validation represents a determination that the inmate warrants an indeterminate SHU term as a

8   severe threat to the safety of others or the security of the institution.  *See id.* at 1242-43. The

9   validated "inmate continues to engage in the misconduct that brings him or her within the

10  amendment's ambit" unless and until prison officials release the validated inmate into the

11  general population, or the inmate becomes eligible for inactive review, or the inmate debriefs.

12  *See id.* at 1243.

13       In *In re Efstathiou*, 200 Cal. App. 4th 725 (2011), the California Court of Appeal rejected

14  another ex post facto challenge to section 2933.6 from an inmate who had been sentenced and

15  validated as a gang affiliate before section 2933.6 was amended.  The appellate court agreed

16  with the reasoning of *Sampson* and, like *Ramirez*, distinguished the United States Supreme

17  Court's *Weaver* decision, noting that, in *Weaver* the "inmate's credits were reduced through no

18  fault of his own," and rejected the notion that the sanctions for possible future prison misconduct

19  constitute a significant factor for either the trial judge or the petitioner.  200 Cal. App. 4th at 729,

20  732.

21       In sum, the California state courts that have addressed the ex post facto claim at issue

22  have (1) used the date of the in-prison misconduct rather than the date of the criminal offense or

23  conviction to determine whether the amended section 2933.6 was retrospective, and

24  (2) determined that the amended section 2933.6 was not retrospective because it only punishes

25  inmates for prison misconduct (i.e., active membership in a prison gang) occurring after January

26  25, 2010.  Similar reasoning has been used by federal courts to reject similar ex post facto

27  challenges to the amended section 2933.6 on federal habeas review.  *See Gregory v. Lewis*, No.

28

Order Denying Petition for Writ of Habeas Corpus; Granting Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.11\Baisa525hcden.wpd

9

1   C 12-0967 EMC (PR), 2012 WL 2343903 (N.D. Cal. June 20, 2012) (applying amended section

2   2933.6 to a prisoner who had been convicted and validated before the effective date of the

3   amendment did not violate Ex Post Facto Clause because the conduct being punished – active

4   association with a prison gang – is continuing in nature and has continued after the amendment

5   to § 2933.6); *Saavedra v. Cate*, No. 1:12-CV-00796 GSA HC, 2012 WL 1978846 (E.D. Cal.

6   June 1, 2012) (same); *Mares v. Stainer*, No. 11-cv-1746-LJO-DLB (HC), 2012 WL 345923

7   (E.D. Cal. Feb. 1, 2012) (same).  This reasoning cannot be said to be contrary to, or an

8   unreasonable application of, clearly established Supreme Court precedent.  *Accord Nevarez*,

9   2012 WL 3646895, at **8-10.

10          Prison gang affiliation is prohibited in California prisons and is, essentially, prison

11   misconduct.  *See* 15 Cal. Code Regs. § 3023(a) ("Inmates and parolees shall not knowingly

12   promote, further or assist any gang as defined in section 3000").  Prison gang affiliation is

13   viewed as ongoing misconduct by prison officials and state courts.  *See In re Efstathiou*, 200 Cal.

14   App. 4th at 731 (petitioner's choice to continue to be an active member of a prison gang "is the

15   equivalent of continuing to engage in misconduct in prison").  California courts therefore

16   reasonably could determine that a prospective prisoner cannot reasonably expect prohibited gang

17   affiliation not to have any impact on the length of the prison term he ultimately will serve upon

18   conviction.  Gang affiliation in California prisons is like any of the other many forms of

19   misconduct in prison that can affect the ultimate length of time the prisoner spends in prison.

20   Assuming, as the California courts have determined, that the relevant date for determining

21   retrospectivity is the date of the in-prison misconduct that causes the prisoner to be ineligible for

22   time credits, the ongoing nature of the misconduct of gang affiliation supports the view that the

23   law has not been applied retroactively.  *Cf. Samuels v. McCurdy*, 267 U.S. 188 (1925) (penalty

24   imposed for possession of liquor that had been obtained before enactment of law was not ex post

25   facto because it punished current conduct of possession).  And although Petitioner was validated

26   as a gang member before section 2933.6 was amended, he did not lose any credits previously

27   earned, but only lost the ability to earn credits after the amendment for his ongoing misconduct

28

1  of being affiliated with a gang.  (Ans., Ex. 5; Pet., Ex. F at 64, 67.)  Under the circumstances, the
2  California courts reasonably could have determined that ongoing gang affiliation was another
3  form of misconduct that could result in a disciplinary, housing or classification decision that
4  affected credit-earning eligibility without offending the Ex Post Facto Clause.  *See* 28 U.S.C.
5  § 2254(d); *Nevarez*, 2012 WL 3646895, at *9.

6       The California courts also reasonably could have concluded that the amendment to
7  section 2933.6 merely caused the loss of an "*opportunity* to take advantage of provisions for
8  early release" that did not amount to an Ex Post Facto Clause violation.  *See Morales*, 514 U.S.
9  at 506 n.3 (emphasis in original).  After all, it is not unreasonable to read *Morales* as imposing
10 stricter requirements for an Ex Post Facto Clause claim than existed in *Weaver*, i.e., that now
11 there must be an actual increase in the penalty by which the crime is punishable, rather than
12 merely a reduction of the opportunity to obtain early release from the punishment imposed.  This
13 reasoning would permit the California courts to reject the ex post facto challenge to section
14 2933.6 without being an unreasonable application of clearly established Supreme Court
15 precedent.  *See* 28 U.S.C. § 2254(d); *Nevarez*, 2012 WL 3646895, at *9.

16      Importantly, the split in approaches to Ex Post Facto Clause claims in the lower federal
17 courts supports the rejection of Petitioner's claim, even though those cases were not considering
18 the particular statute at issue here.  As discussed earlier, lower federal courts have reached
19 differing conclusions on the critical date for determining retrospectivity, with many courts
20 viewing the critical date as the date of the in-prison conduct affecting the time credits rather than
21 the date of the criminal offense.  Lower federal courts also have reached differing conclusions on
22 the punishment allegedly being increased, with some courts viewing the punishment as the
23 punishment for the in-prison misconduct rather than the punishment for the criminal offense.
24 Given the lack of holdings (let alone clear holdings) from the Supreme Court on the denial of
25 conduct credits for ongoing misconduct, it simply cannot be said that the California courts
26 unreasonably applied clearly established Supreme Court precedent in rejecting Petitioner's ex
27 post facto claim.  *See* 28 U.S.C. § 2254(d); *Nevarez*, 2012 WL 3646895, at *10.  Petitioner's ex
28

1  post facto claim must be DENIED.

2                                    **CONCLUSION**

3          The petition for writ of habeas corpus is DENIED.

4          Petitioner has "made a substantial showing of the denial of a constitutional right," 28

5  U.S.C. § 2253(c)(2), and reasonable jurists "could debate" this Court's assessment of his claim

6  that the application of the amended version of California Penal Code section 2933.6 violated his

7  rights under the Ex Post Facto Clause. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

8  Accordingly, a certificate of appealability is GRANTED on this claim.

9          The Clerk is instructed to enter judgment in favor of respondent and close the file.

10         IT IS SO ORDERED.

11  DATED:  ___3/18/13_____

12                                    LUCY H. KOH
                                      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus; Granting Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.11\Baisa525hcden.wpd